IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-00514-CMA-KLM

CHRISTINA WATSON,
ROBERT WATSON, and
THE ESTATE OF FALON WATSON,

    Plaintiffs,

v.

VISTA OUTDOOR, INC.,
VISTA OUTDOOR OPERATIONS, LLC, and
VISTA OUTDOOR SALES, LLC,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendants Vista Outdoor, Inc., Vista Outdoor Operations, LLC, and Vista Outdoor Sales, LLC's ("Defendants") Motion for Summary Judgment. (Doc. # 65.) Plaintiffs filed a response (Doc. # 71) on May 25, 2018 and Defendants filed a reply (Doc. # 72) on June 7, 2018. Having thoroughly reviewed the underlying briefing, pertinent record, and applicable law, the Court grants Defendants' Motion for the following reasons.

### I.    BACKGROUND

Fifteen-year-old Fallon Watson ("Decedent") died from a single gunshot wound to the head on March 1, 2014 ("the incident"). (Doc. ## 35 at ¶¶ 9-10, 65-1 at 4.) After

performing an autopsy, Dr. Robert Bux described Decedent's wound as a "[p]enetrating gunshot wound with the bullet going steeply upward through the hard palate adjacent to the right maxillary canine tooth and entering the right frontal lobe striking the dura and ricocheting backward, lodging in the medial superior margin of the right frontoparietal lobe area." (Doc. # 65-1 at 5.) Dr. Bux concluded that "[a]t the time of discharge, the end of the muzzle of the weapon was placed in contact with the skin underneath the right chin" and that the wound was "self-inflicted . . . ." (*Id*.)

Plaintiffs in this lawsuit are Decedent's parents and Decedent's estate. (Doc. # 35 at ¶¶ 1-2.) On the day of the incident, Decedent's father discovered her body. (*Id*. at ¶ 12.) At that time, the pistol that discharged and caused Decedent's death was underneath her body, inside a holster that was fastened with a strap. (Doc # 71 at 3.) Defendants manufactured a nylon holster branded as Uncle Mike's Sidekick Hip Holster ("the holster"), which was carrying the pistol involved in the incident. (Doc. # 35 at ¶¶ 12-16, 18.)

Plaintiffs argue that the pistol discharged accidentally because of a defect in the design of the holster. (*Id*. at ¶ 17.) Specifically, Plaintiffs allege that the holster's design featured soft sides which allowed the pistol's safety to be unintentionally disengaged and the pistol's trigger to be unintentionally pulled. *See* (Doc. # 71 at 4.) Defendants, by contrast, argue that the design of their holster is not defective and that the holster could not have contributed to Decedent's death as Plaintiffs allege. (Doc. # 65 at 4.)

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B.     APPLICATION**

Plaintiffs assert two products liability theories against Defendants. First, Plaintiffs argue that Defendants are strictly liable because Defendants manufactured and sold a defectively designed product. Second, Plaintiffs argue that Defendants negligently breached their duty of care by failing to properly design the holster, provide warnings about accidental discharge, or recall the holster. (Doc. # 71 at 5, 9.)

   1.     <u>Strict Product Liability</u>

A claim for strict product liability in Colorado requires a plaintiff to prove the following elements:

> (1) the product is in a defective condition unreasonably dangerous to the end user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it was sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the

product and is engaged in the business of selling products; and (5) the plaintiff sustained damages.

*Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536-37 (Colo. 1997) (citation omitted).

Where, as here, a plaintiff asserts that a product is unreasonably dangerous due to a design defect and the dangerousness of the design is "defined primarily by technical, scientific information," the Colorado Supreme Court has held that courts should employ a "risk-benefit test." *Walker v. Ford Motor Co.*, 406 P.3d 845, 847 (Colo. 2017) (citation omitted) (noting consumer expectation test is not appropriate for such a case). In order to prove that a product is in a defective condition which makes it unreasonably dangerous to the end user under the risk-benefit test, a plaintiff must demonstrate that, "on balance, the risk of danger inherent in a challenged design outweighs the benefits of such a design." *Barton*, 938 P.2d at 537 (citation omitted). Whether the risk of danger outweighs the benefits of a superior design depends on an analysis of factors including the following:

> (1) the product's usefulness and desirability; (2) its safety aspects; (3) the availability of a safer product; (4) the manufacturer's ability to eliminate the unsafe characteristics; (5) the user's ability to avoid any danger through the exercise of care; (6) the user's anticipated awareness of the inherent danger; [and] (7) the feasibility of the manufacturer spreading any loss among its customers.

*Armentrout v. FMC Corp.*, 842 P.2d 175, 184 (Colo. 1992) (citations omitted). The foregoing factors are not exhaustive "but merely illustrative of factors which may assist in determining whether or not a design is unreasonably dangerous." *Id*. Additionally, depending "on the circumstances of each case, flexibility is necessary to decide which factors are to be applied and the list of factors . . . may be expanded as needed." *Id*.

5

### a. Defendants' argument

Defendants argue that they are entitled to summary judgment on Plaintiffs' strict liability claim because there is no genuine dispute of material fact with regard to whether Defendants' product is defective. (Doc. # 65 at 5.) Defendants assert that "the undisputed evidence demonstrates that there was no defect in the holster and that the holster was appropriately manufactured . . . ." (*Id*. at 6.) To support their argument, Defendants' provide the reports of two firearms experts who opine that the Defendants' holster was neither unsafe nor defectively designed.

Defendants' expert Thomas Marx is a trained engineer, police officer, and holster designer. (Doc. # 65-1 at 38.) Mr. Marx is "listed as an Inventor on 14 Holster and Holster Related Patents (5 for Holsters alone) and some 25 Patents within firearms holster and accessory categories overall" and he has "taught, lectured and written about holsters and their designs on a worldwide level . . . ." (*Id*.) In his investigation, Mr. Marx analyzed Plaintiffs' holster which had been substantially altered by law enforcement in routine investigations after the incident. (*Id*.) Mr. Marx noted that the holster, a "Size 5 Uncle Mike's SIDEKICK Hip Holster" features a patented and unique "construction technique that allowed for the use of foam core, 3-layer, nylon laminate, instead of just employing one or more layers of nylon fabric." (*Id*.) In light of the composition of the holster and the materials used in its construction, Mr. Marx concluded that "[a]s designed, this holster will perform as intended, and provide the end user with a safe and secure method to carry the appropriate firearm(s) on their person." (*Id*.)

Defendants' also provide the expert opinion of Michael Shain, who is a "firearms handling and safety expert, and [an] experienced law enforcement officer . . . ." (*Id*.) Mr. Shain analyzed Plaintiffs' holster and pistol involved in the incident as well as an identical exemplar holster and pistol for testing purposes. (*Id*. at 43.) Mr. Shain determined that although Plaintiffs' holster is a size too small for Plaintiffs' pistol, the holster "still covers the safety lever of the pistol, protecting it from inadvertent manipulations." (*Id*. at 45.) Mr. Shain explained:

> [i]t is possible to intentionally reach into the holster and move the lever from the safe to fire position, but because of the positive nature of the safety lever detent mechanism and the amount of force necessary to move the lever down, (approximately 6 pounds), an unintentional disengagement of the manual safety while covered by the holster would require some type of extraordinary abuse and/or misuse of the pistol and holster. The positive purchase of the safety detent and the force required to move it also preclude the possibility that the holster itself disengaged the safety on the subject pistol.

(*Id*.) In addition to the fact that Defendants' holster prevents a manual safety from being unintentionally disengaged, Mr. Shain also found that the design of the holster is such that the holster prevents an unintentional trigger pull. (*Id*. at 47.) Specifically, Mr. Shain found that the holster is "thick and stiff" and the "entire trigger guard and trigger of the subject pistol is enclosed in the holster and is in a location near to the outside seam stitching which adds strength and rigidity to the holster." (*Id*.) To test the design of the holster, Mr. Shain attempted to discharge a pistol while it was inside the holster:

> With the pistol cocked and the safety placed in the fire position, [Mr. Shain] attempted to squeeze through the holster in the area of the trigger guard and move the trigger. Numerous attempts using each hand and both hands together resulted in no discharges of the pistol. *The holster is simply too thick and stiff to allow manipulation of the trigger from the outside of the holster*. The construction of the Uncle Mike's Sidekick holster is smooth on

7

the inside of the holster, without any obstructions or irregular surfaces that might enter the trigger guard.

(*Id*.) (emphasis added).

In sum, Defendants have satisfied their initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law due to the foregoing evidence. *Bones*, 366 F.3d at 875. Defendants not only point to a lack of evidence for Plaintiffs' on the element of whether Defendants' product is defective, but Defendants also present evidence that tends to disprove Plaintiffs' claim. *See Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325) (movant who does not bear the ultimate burden of persuasion need not disprove other party's claims; rather, movant need simply point the court to a lack of evidence for other party on an essential element of that party's claim).

Mr. Marx analysis of Defendants' product showed that due to the holster's 3-layer, nylon laminate design, the holster provides users with a safe and secure means of transporting firearms on their person. (Doc. # 65-1 at 38.) Further, Mr. Shain's analysis of Defendants' product showed that the holster's design is safe because it prevents a manual safety on a pistol from being accidentally disengaged and the holster also prevents a pistol's trigger from being accidentally pulled while the pistol is inside the holster. (*Id*. at 47.) Thus, the evidence Defendants present demonstrates that, on balance, the benefits of Defendants' design are not outweighed by the risk of danger inherent the challenged design because the holster does not create a risk that a pistol might accidentally discharge while inside the holster. *See Barton*, 938 P.2d at 537 (citation omitted).

### b. Plaintiff's response

Because Defendants, as the movants in the instant motion, met their initial burden, the burden shifts to Plaintiffs to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Plaintiffs argue that Defendants' holster was "sold in an unreasonably dangerous condition such that the trigger could accidentally be pulled while in the holster." (Doc. # 71 at 6.) In support of their argument, Plaintiffs make the following factual assertions:

- upon discovering her, Decedent's father found the pistol in its holster (Doc. # 71-1 at 6);

- law enforcement officers at the scene noted that Plaintiffs' pistol was secured in its holster, with the retention strap fastened (*id*. at 18); and

- the pistol's trigger was entirely covered by the holster's nylon material (Doc. # 71 at 6).

Based on the foregoing facts, Plaintiffs argue that the "undisputed evidence supports a finding that the [g]un was within its holster when it fired." (*Id.*)

### c. Analysis

In order to satisfy their burden of production at the summary judgment stage, Plaintiffs must raise facts establishing a genuine dispute as to whether Defendants' holster is in a defective condition unreasonably dangerous to the end user according to the risk-benefit test. *Barton*, 938 P.2d at 537 (citation omitted). Plaintiffs argue that "a reasonable jury here could weigh these facts and make a determination that a properly

9

designed holster should prevent any trigger pull sufficient to cause a gun to discharge."
(Doc. # 71 at 6.) However, Plaintiffs' argument fails for two reasons.

First, Plaintiffs fail to establish that Defendants' holster has an unsafe product defect under the risk-benefit test. According to the risk-benefit test, the relevant inquiry is not what consumers expect, but "whether the benefits of a particular design outweigh the risks of harm [the design] presents to consumers." *Walker v. Ford Motor Co.*, 406 P.3d 845, 847 (Colo. 2007) (citations omitted). However, Plaintiffs did not produce any facts pertaining to the *Armentrout* factors that weigh a product's risks versus its benefits. *See Armentrout*, 842 P.2d at 184 (outlining seven factors relevant to risk-benefit analysis). Additionally, whether Defendants' holster is not reasonably safe depends on "technical, scientific information" related to, *inter alia*: the thickness of the material used in the holster's design; whether the holster prevents a manual safety from unintentionally disengaging; and whether the design of the holster might cause a pistol's trigger to be unintentionally pulled. *Id*.

Viewing the evidence in the light most favorable to Plaintiffs, there are no facts in the record showing that Defendants' product presents a significant risk of harm to users. Plaintiffs allege that the holster's defect is evidenced by the fact that a pistol accidentally discharged while it was inside the holster. However, the relevant facts do not lead to the conclusion that the holster is defective. Even assuming arguendo that the pistol accidentally discharged, Plaintiffs have not presented evidence showing that it was the holster's design that was responsible for the pistol discharging as opposed to the pistol itself, for example. Moreover, Plaintiffs have not produced facts showing that a manual

safety may be unintentionally disengaged while a pistol is in the holster, and Plaintiffs have not produced facts showing that a pistol's trigger may be unintentionally pulled while the pistol is inside the holster. Rather, Plaintiffs' argument assumes that the holster is defective because the pistol was found inside the holster without any additional evidence of an unsafe defect. Therefore, Plaintiffs have not met their burden of production because Plaintiffs have not raised facts showing that Defendants' holster has a defect that renders it unreasonably unsafe according to the risk-benefit test.

Second, Plaintiffs factual assertions neither address nor rebut the facts raised by Defendants.[1] As opposed to raising facts disputing the findings of Defendants' experts—which show that the holster was not actually defective in the way that Plaintiffs allege—Plaintiffs only repeat the allegations they raise in their complaint. (Doc. # 35 at ¶¶ 12, 15, 16.) However, the nonmoving party may not simply rest upon its pleadings to satisfy its burden of production. *Anderson*, 477 U.S. at 256. Without additional factual support—which Plaintiffs did not produce—Plaintiffs' argument that Defendants' holster is defective because a pistol accidentally discharged while inside the holster cannot survive Defendants' factual findings showing that such an event could not have been related to its holster's design. Therefore, Plaintiffs' allegations do not satisfy Plaintiffs'

---

[1] The Court notes that in their response to the instant motion, Plaintiffs make a conclusory statement that "[t]he soft sides of the holster allowed CBI specialists to disengage the safety and fire the gun while in the holster." (Doc. # 71 at 4.) However, Plaintiffs do not support the foregoing statement with any facts in the record. Plaintiffs do cite to their own Responses to Requests for Admission, which was produced in Movants' Appendix (Doc. # 65-1 at 36), but the statement contained in that document is essentially identical to the statement in Plaintiffs' response, and it contains no additional support or authority. Therefore, it is insufficient to create a genuine dispute of material fact with regard to whether Defendants' holster is defective.

burden to set forth specific facts showing that there is a genuine issue for trial with regard to whether Defendants' holster is defectively designed.

2. Negligence

A claim for negligence in Colorado requires a plaintiff to prove (1) the defendant owed a legal duty of care; (2) the defendant breached its duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach caused the plaintiff's injury. *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). Where a plaintiff alleges negligence in a product liability action, the "plaintiff must [also] prove that the product was defective." *Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 205 (Colo. 1992). To determine whether a product is in a defective condition unreasonably dangerous to the end user, courts employ the risk-benefit test. *Walker v. Ford Motor Co.*, 406 P.3d 845, 847 (Colo. 2017). Accordingly, courts must employ the risk-benefit test in a products liability action when analyzing either a strict liability claim or a negligence claim. *Id*. at 852 (citing *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1245 ("[W]hen a product is not reasonably safe a products liability action may be maintained"); *Mile Hi*, 842 P.2d at 1245 (holding plaintiff must prove product was defective "[r]egardless of whether a products liability action is grounded in negligence or strict liability")).

In fact, the Colorado Supreme Court has held that in a design-defect case where, as here, the dangerousness of the design is defined primarily by technical, scientific information, "*the risk-benefit test essentially subsumes the issue of negligence*." *Id*. (emphasis added) (citing *Keller v. Koca*, 111 P.3d 445, 447-48 (Colo. 2005) (explaining that a determination of negligence requires consideration of multiple factors, including

"the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct," and the burden of guarding against harm)). Reasonableness is "a negligence concept" and, thus, "the risk-benefit test 'includes language which is rooted in negligence.'" *Id*. (citing *Camacho*, 741 P.2d at 1245) (quoting *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1173 (Colo. 1993)). Therefore "[a] manufacturer is not negligent for designing a reasonably safe product." *Id*.

This Court has found that Defendants have established that there is no genuine dispute of material fact with regard to whether their product is defective. *See supra* Section 1(a). Defendants have produced expert analysis showing that their holster is reasonably safe and does not allow either a manual safety to be unintentionally disengaged or for a trigger to be unintentionally pulled while a pistol is in the holster. *Id*. Plaintiffs, by contrast, have not produced facts that challenge either the analysis or conclusions of Defendants' experts. *See supra* Section 1(c). Therefore, because Defendants have established that their holster is reasonably safe and because "[a] manufacturer is not negligent for designing a reasonably safe product," Plaintiffs' negligence claim fails as a matter of law. *See Walker*, 406 P.3d at 852.

### III. CONCLUSION

Accordingly, the Court ORDERS that Defendants Vista Outdoor, Inc., Vista Outdoor Operations, LLC, and Vista Outdoor Sales, LLC's Motion for Summary Judgment (Doc. # 65) is GRANTED. It is

FURTHER ORDERED that the case is DISMISSED WITH PREJUDICE, with judgment entered against Plaintiffs and in favor of Defendants. It is

FURTHER ORDERD that Defendants shall have their costs.

DATED: October 26, 2018          BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge